# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARLOS ZUNIGA HERNANDEZ,:** | **Civil No. 1:12-CV-647** |
| : | |
| **Plaintiff** : | **(Judge Conner)** |
| : | |
| **v.** : | **(Magistrate Judge Carlson)** |
| : | |
| **UNITED STATES OF AMERICA,** : | |
| : | |
| **Defendant** : | |

## REPORT AND RECOMMENDATION

## I.      INTRODUCTION

In this action, Carlos Zuniga Hernandez, brings a claim against the United States of America pursuant to the Federal Tort Claims Act, alleging that corrections officers and supervisory officials at the Low Security Federal Correctional Institution in White Deer, Pennsylvania, responded negligently and ineffectively to his claims that another inmate was sexually and physically assaulting him in January 2009. Following discovery, the United States has moved for summary judgment. That motion is ripe for disposition and has been referred to the undersigned for purposes of issuing a report and recommendation. Following a careful review of the parties' briefs and the undisputed factual record presented, we conclude that the discretionary function exception to claims brought under the Federal Tort Claims Act forecloses

the plaintiff's claims in this case. Accordingly, we will recommend that the defendant's motion for summary judgment be granted, and the case closed.

## II. <u>BACKGROUND</u>[1]

### A. Allegations in the Complaint

The plaintiff in this action, Carlos Zuniga Hernandez, is an inmate in the

---

[1] We note at the outset that the factual allegations made in the complaint and the undisputed facts of record in this case diverge in many important respects. In this section of our report, we will provide an overview of the allegations made in the complaint, and then contrast that overview against the factual record submitted by the defendant. The plaintiff was placed on clear notice of his obligation to come forward with evidence to create an issue of material fact regarding his claims, (Doc. 37.), but he failed to do so. Instead, the plaintiff seems to contest the defendant's motion for summary judgment simply by relying upon allegations made in the complaint, and by citing inapplicable regulations enacted in 2012, three years after the incidents alleged in his complaint. Notably, Hernandez has not presented us with any competent evidence that could permit us to find that a genuine dispute of fact exists. Nor has he contested the defendant's statement of facts, as he is required to do. This failure to contest the defendant's factual narrative equates to an admission of those facts. <u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. <u>See Sanders v. Beard</u>, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); <u>Thomas v. Norris</u>, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure). Therefore, we find that at this stage of the proceedings, where the plaintiff has been given clear notice regarding his obligations under Rule 56 of the Federal Rules of Civil Procedure, and has failed to follow those obligations when responding to the defendants' motion, that the court should proceed to consider the factual record actually presented.

custody of the Federal Bureau of Prisons, currently incarcerated at the medium-security Federal Correctional Institution in White Deer, Pennsylvania ("FCI Allenwood"). During the winter and spring of 2009, the time period relevant to his claims in this case, Hernandez was designated to the Low Security Correctional Institution at that complex ("LSCI Allenwood").

Hernandez's complaint involves two alleged incidents of sexual assault and a separate physical assault by another inmate between January 9, 2009, and January 14, 2009. First, Hernandez claims that on January 9, 2009, he was sexually assaulted by another inmate in the shower at approximately 9:45 a.m. Hernandez claims that he reported this incident to "the duty corrections officer" at 7:00 p.m., and that this officer did not act upon the report. (Doc. 1, Compl., ¶¶ 5-7.)

Next, Hernandez alleges that he was sexually assaulted for s second time in the showers at LSCI Allenwood on January 13, 2009, also at 9:45 a.m., and that the following morning at 8:30 a.m. he encountered the offending inmate in his sleeping quarters stealing Hernandez's personal property, at which time the other inmate assaulted Hernandez. (Id. ¶ 10.)

Hernandez claims that he reported each of these incidents to Correctional Officer Luis Arenas on January 14, 2009, at 8:45 a.m., to Case Manager Gainer at 9:15 a.m., and to Correctional Counselor Smith at 9:20 a.m. (Id. ¶¶ 11-13.)

Hernandez alleges that none of these corrections employees reported his claims. (Id.)

Hernandez does allege that Correctional Officer Arenas ordered him to another section of LSCI Allenwood, separated from the allegedly offending inmate, and he directed Hernandez to speak with Lieutenant Soeller during lunch. (Id. ¶¶ 14-15.) According to Hernandez, he met with Lieutenant Soeller at 10:30 a.m. on January 14, 2009, but the Lieutenant told him he did not believe Hernandez's claims of sexual assault. Nevertheless, Hernandez alleges that this officials told the offending inmate not to enter Hernandez's sleeping area. (Id. ¶¶ 17-21.)

Finally, Hernandez claims that on January 14, 2009, at 8:15 p.m., the offending inmate came to Hernandez's sleeping area and assaulted him with a weapon, causing him to sustain injuries to his head, face, scalp, and upper body which necessitated medical attention at an outside medical facility. (Id. ¶ 22-24.)

## B.    Factual Background[2]

The factual record brings some clarity to Hernandez's claim in this case, and provides the evidence that we must consider when assessing the United State's summary judgment motion. That record, which Hernandez has not contested or

---

[2] The factual background to this report is taken from the defendant's statement of material facts (Doc. 27.), to which the plaintiff has never responded with contrary evidence, and which are now appropriately deemed to be undisputed.

contradicted in any fashion, also departs in many ways from the allegations that Hernandez makes in the complaint.

Thus, the evidence that has been provided to the court reveals that on January 14, 2009, Hernandez reported to Correctional Officer Luis Arenas that he was having problems with another inmate, but Hernandez would not provide this corrections officer with any specific information about the kind of problems he was having. (Doc. 27, Statement of Material Facts (SMF) ¶ 3.) Corrections Officer Arenas contacted Lieutenant Soeller, the Operations Lieutenant at LSCI Allenwood, who instructed Arenas to send both inmates to his office. (Id. ¶ 4.) On January 14, 2009, Lieutenant Soeller spoke with Hernandez and the other inmate separately. (Id. ¶ 5.) When Lieutenant Soeller interviewed Hernandez on January 14, 2009, Hernandez complained that the other inmate was pressuring him for sex, but he was not specific, and he denied any physical contact or threats by the other inmate. (Id. ¶ 6.) Hernandez was non-specific about his complaints, claimed he had been harassed for about a month, but did not appear to be very worried about it. (Id. ¶ 7.) Hernandez nevertheless asked Lieutenant Soeller to place the other inmate in the SHU. (Id. ¶ 8.) The inmate that Hernandez claimed was giving him trouble denied having any problems with Hernandez. (Id. ¶ 9.) Following his interviews with both inmates, Lieutenant Soeller concluded that he did not have sufficient reason to place either

inmate in the SHU, but he told the inmates that if anything should occur between them, that they would both be placed in the SHU. (Id. ¶ 10.)

On January 14, 2009, at 8:17 p.m., Hernandez was involved in a physical altercation with the other inmate at LSCI Allenwood. (Id. ¶ 11.) Special Investigative Services (SIS) investigated the incident and concluded:

> On March 10, 2009, at 4:00 p.m., an SIS investigation concluded, Inmate Carlos Zuniga Hernandez, #82559-180, manufactured and possessed a weapon by placing a combination lock inside a white sock and utilized the weapon during a fight involving Inmate [redacted], on January 14, 2009, at approximately 8:17 p.m. Inmate Zuniga admitted during the investigation, he made the weapon while inside his cubicle, U08-561-U, and struck inmate [redacted] four times in the head with the weapon after he was struck in the face by inmate [redacted] while in his assigned cubicle. Minutes later both inmate Zuniga and [redacted] engaged in a fight on Union A-Range, and struck each other numerous times with the same type of weapon and their fists. Both inmates sustained deep lacerations to their heads and significant abrasions through out [sic] their bodies. Both inmates needed to be sent to an outside hospital for further medical treatment.

(Id. ¶ 12; Declaration of Michael S. Romano (Ex. 1); Incident Report (Attach. B).)

Hernandez was subsequently issued Incident Report 1843130 on March 10, 2009, after completion of the investigation, charging him with violations of Code 104, possession and manufacture of a weapon, and Code 201, fighting with another person. (SMF ¶ 13.) Hernandez was provided with the incident report on March 11, 2009. (Id. ¶ 14.)

On March 18, 2009, a week after being issued the incident report, and more than two months after the assault, Hernandez made new allegations of inappropriate conduct by the offending inmate that occurred in January 2009, including claims that the other inmate touched him in a sexual manner while he was showering, and on another occasion in the laundry room. (Id. ¶¶ 15-16; Romano Decl. (Ex. 1); SIS Investigation Report, March 23, 2009 (Attach C).)

In response to what were new allegations from Hernandez, SIS undertook another investigation on March 18, 2009, which included an interview by an investigator on March 18, 2009, at 6:00 p.m. (SMF ¶ 17.) During this interview, Hernandez told an investigator that while he was showering on January 9, 2009, the other inmate approached him from behind and placed his hands on Hernandez's shoulders, but when Hernandez turned around and told him to leave, the inmate left. (Id. ¶ 18.)

During this same interview, Hernandez told the investigator that on January 13, 2009, while he was in the shower, he again felt someone come up from behind him and place one hand on his shoulder and the other on his hip; that he turned around and saw that the other inmate was naked; and that he again told the other inmate to leave, and the inmate departed without further incident. (Id. ¶ 19.)

Hernandez also told the investigator that there was a third incident involving the other inmate, which allegedly occurred in the laundry room on January 14, 2009, when the inmate grabbed Hernandez by the wrist and told him he wanted to speak with him, but Hernandez pulled away and told the other inmate that he was not "like that". (Id. ¶ 20.) During the interview, Hernandez told the investigator that after the laundry room incident on January 14, 2009, the other inmate began spreading rumors that Hernandez was having sex with other inmates, and that three different inmates approached him to have sex. (Id. ¶ 21.) Hernandez also alleged that at least one other inmate approached him in a sexual manner after this incident, but discontinued his advances when Hernandez told him to leave him alone. (Id. ¶ 22.)

The investigator asked Hernandez if either of the inmates touched his genitals, anus, groin, buttocks, or inserted any part of their genitals or body parts into his anus or mouth, and Hernandez said they did not. (Id. ¶ 23.) Hernandez also confirmed that he was never forced to have sex with another inmate, and denied ever having had consensual sex with another inmate. (Id. ¶ 24.) Hernandez told the investigator that he did not previously report the incidents as sexual assault because he did not realize he had been assaulted until he read the BOP program statement regarding sexual abuse. (Id. ¶ 25.) Following the March 2009 investigation into Hernandez's new claims, the investigators concluded that Hernandez had fabricated the allegations after

he was notified that his incident report for fighting on January 14, 2009, was being processed for disciplinary sanctions.  (Id. ¶ 26.)

During the investigation into Hernandez's claims, the Senior Officer on duty on January 9, 2009, told the investigator that Hernandez did not speak to him about being sexually assaulted or pressured by any other inmate.  (Id. ¶ 27; Romano Decl. (Ex. 1); SIA Investigation Report, June 24, 2010 (under seal).)  Also during the investigation, Hernandez's case manager reported that Hernandez had been in her office for a program review on January 9, 2009, and had complained that another inmate in his cube was bothering him, but did not specify the issues, and did not report that he had been sexually assaulted or pressured.  (SMF ¶ 28; Romano Decl. (Ex. 1); SIA Investigation Report, June 24, 2010 (under seal).)

Inmate cell assignments at LSCI Allenwood are determined by a Unit Team with oversight by the Unit Manager.  (SMF ¶ 29; Declaration of Matt Rodarmel (Ex. 2) ¶ 3.)  Considerations for cell assignments include inmate requests as to whom they are celled with, although this is not determinative; and known rivalry circumstances, including gang affiliation, geographic animosity towards other regions, race, and other relevant circumstances.  In addition, prison officials consider inmates' disciplinary histories, separation concerns, and any other factors that staff deems relevant to the cell assignment at issue.  (SMF ¶ 39; Rodarmel Decl. (Ex. 2) ¶ 4.)

Once an inmate has been assigned a cell mate, the inmate has a variety of ways to request a cell change, or to change cell mates, including requests made to the Unit Team, who make regular rounds of the housing units and requests to other staff, who make rounds of the units and are available to discuss concerns. (SMF ¶ 31; Rodarmel Decl. (Ex. 2) ¶ 5.) Inmates may make a request of any staff member to be placed in protective custody if they believe there are imminent concerns for safety, and they will then be removed from their current cell assignment and placed in the SHU pending an investigation undertaken to determine the need for continued protective custody. (Id. ¶ 32)

When an inmate requests protective custody, the operations lieutenant generally assigns the inmate to the SHU, pending the outcome of an investigation into the inmate's concerns. (Id. ¶ 33.) Lieutenant Soeller offered protective custody to Hernandez when he interviewed him on January 14, 2009, but Hernandez declined the offer. (Id. ¶ 34.)

## C.    Procedural History

Hernandez commenced this action on April 9, 2012, by filing a complaint pursuant to the Federal Tort Claims Act, alleging that staff members at LSCI Allenwood failed to protect him from another inmate. (Doc. 1.) The United States

moved for summary judgment on January 15, 2013. (Doc. 23.) The motion is fully briefed (Docs. 26, 27, 38, 39), and is ripe for disposition.

## III.   <u>STANDARD OF REVIEW</u>

The United States has moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. <u>Id.</u> at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. <u>Conoshenti v. Pub. Serv. Elec.</u>

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, a party who seeks to resist a summary judgment motion by

citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to

avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or

suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. Under the Local Rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as recognized in Celotex Corp. v. Catrett, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added).

Doe v. Winter, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa.

Apr. 5, 2007) (parallel citations omitted; court's emphasis). A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## IV.  DISCUSSION

The United States argues that Hernandez's tort claims based upon injuries allegedly sustained from sexual and physical assault by another inmate are barred by the discretionary function exception to the Federal Tort Claims Act. Upon consideration, we agree that under the facts of this case, Hernandez's claims necessarily fail and summary judgment in favor of the United States is warranted.

Hernandez's sole claim against defendant United States is under the FTCA, 28 U.S.C. § 2401, *et seq*. and 28 U.S.C. § 2675, *et seq*. "The FTCA allows federal inmates to sue the United States for injuries sustained while incarcerated. 28 U.S.C. § 2674." Moshier v. United States, No. 05-180, 2007 WL 1703536, * 9 (W.D. Pa. June 11, 2007); see also Baker v. United States, No. 05-146, 2006 WL 1946877, * 4

(W.D. Pa. July 11, 2006). The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. 28 U.S.C. § 2675 (a). See Rosario v Bureau of Prisons, No. 06-873, 2007 WL 951468, * 4 (M.D. Pa. March 27, 2007).

The liability of the United States under the FTCA is, however, subject to a number of exceptions that are set forth in 28 U.S.C. § 2680, including the "discretionary function" exception that is invoked in this action. That exception provides that the United States is not liable for:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The exception covers only those acts that are discretionary in nature, meaning acts that involve an element of judgment or choice, and it is the nature of the conduct itself, not the status of the actor, that determines whether the exception applies. United States. v. Gaubert, 499 U.S. 315, 322 (1991). This requirement of judgment or choice is not satisfied if a "federal statute, regulation, or

policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to adhere to the directive." Berkovitz v. United States, 486 U.S. 531, 536-37 (1988); see also Koch v. United States, 814 F. Supp. 1221, 1227 (M.D. Pa. 1993) (McClure, J.) ("Conduct is not discretionary unless it involves an element of judgment or choice.").

Moreover, even "assuming the challenged conduct involves an element of judgment," it must still be determined "whether that judgment is of the kind that the discretionary function exception was designed to shield. Gaubert, 499 U.S. at 322. Because the purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," id. at 323 (citation omitted), the exception "protects only governmental actions and decisions based on considerations of public policy," id. (quoting Berkovitz, 486 U.S. at 537); see also Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000) (in determining whether the discretionary function exception is applicable, courts must first determine whether the challenged conduct involves an "element of judgment or choice" and, if so, courts consider "whether that judgment is the kind that the discretionary function exception was designed to shield.").

"Before we can make the two-part . . . inquiry to determine whether the discretionary function exception immunizes the Government from a suit based on its conduct, we must identify the conduct at issue." Merando v. United States, 517 F.3d 160, 165 (3d Cir. 2008). This inquiry, in turn, requires us to "decide whether a statute, regulation, or policy" required the BOP to protect Hernandez "in any specific manner, or whether the Government's actions were discretionary because they involved an element of judgment or choice." Donaldson v. United States, 281 F. App'x 75, 77 (3d Cir. June 2, 2008) (quoting Merando, 517 F.3d at 168).

The United States' duty of care owed to federal prisoners is provided by statute at 18 U.S.C. § 4042, which requires, among other things, that the Bureau of Prison shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States . . . ." This statute thus establishes a standard of "ordinary diligence" that must be exercised with respect to care for prisoners, and obliges prison officials "to exercise reasonable care and diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him." Hossic v. United States, 682 F. Supp. 23, 25 (M.D. Pa. 1987).

The Third Circuit has held that the statute obligating the BOP to protect inmates in its care "leaves the implementation of these duties to the discretion of BOP

officials." Donaldson, 281 F. App'x at 77. In addition, the appeals court has observed that other federal regulations require the BOP to "control inmate behavior" and "take disciplinary action" when necessary, but at the same time leave it to the BOP's discretion as to how to accomplish those objectives. Id. (citing 28 C.F.R. § 541.10(a); 541 C.F.R. § 541.22(a) (allowing BOP to remove an inmate from general population for safety reasons).

In Donaldson, the Third Circuit held that the discretionary function exception barred an inmate-plaintiff's claim that prison officials ignored his reports of sexual harassment, and determined that no federal statute, regulation, or policy obligated the BOP to take a specific or particular course of action to ensure the inmate's safety from attack. Id. at 75. In addition, the court found that BOP officials' decisions about how best to protect inmates from other inmates were the kind of judgments that the discretionary function exception was intended to protect. Id. at 78.

In addition to Donaldson, numerous other federal courts, including a number of judges of this court, have held that claims brought under the FTCA for injuries caused by other inmates are barred by the discretionary function exception. See, e.g., Castillo v. United States, 166 F. App'x 587, 589 (3d Cir. 2006); Rinaldi v. United States, Civ. A. No. 1:CV-09-1700, slip op. at 10 (M.D. Pa. Nov. 9, 2010) (Rambo, J.); Michtavi v. United States, Civ. A. No. 4:07-CV-0628, 2009 WL 578535, at *10

(M.D. Pa. Mar. 4, 2009) (Jones, J.); Lopez v. Brady, Civ. A. No. 4:07-CV-1126, 2008 WL 4415585, at *13-16 (M.D. Pa. Sept. 25, 2008) (McClure, J.); Alfrey v. United States, 276 F.3d 557, 564 (9th Cir. 2002); Dykstra v. Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998); Calderon v. United States, 123 F.3d 947, 949 (7th Cir. 1997).

As the defendant correctly observes, courts have also determined that BOP's actions in transferring, classifying, and placing prisoners in particular institutions are acts that come within the discretionary function exception. See, e.g., Cohen v. United States, 151 F.3d 1338, 1345 (11th Cir. 1998); see also Enlow v. United States, 161 F. App'x 837, 840-41 (11th Cir. 2006) (transfer and placement of prisoners typically falls under the discretionary function exception to the FTCA); Santana-Rosa v. United States, 335 F.3d 39, 43 (1st Cir. 2003) (assignment of inmates to particular units or placement in cells comes within the discretionary function exception).

In this case, we find that the undisputed facts of record, coupled with an assessment of the discretionary function exception's application in light of those facts, compels us to find that Hernandez's tort claims against the United States fail as a matter of law.

As a threshold matter, we are constrained to find on the record we have been provided that there is insufficient evidence to support Hernandez's claim that he was

subjected to a sexual assault in the first place, or that he ever informed prison officials of such in January 2009. Indeed, the record shows that Hernandez never reported being sexually assaulted until two months after the alleged incidents occurred; the undisputed facts of record show that Hernandez made non-specific complaints that he was having problems with another inmate on January 9, 2009, but did not complain with any specificity that he had been sexually assaulted or otherwise pressured. (SMF ¶¶ 27-28.) Days later, on January 14, 2009, Hernandez again complained to prison employees that he was having problems with another inmate, but he provided no real details about the kinds of problems he was having, (id. ¶ 3), and he did not have make a formal report until March 18, 2009, just after he was issued an incident report for fighting with another inmate, (id. ¶¶ 12-15, 23-29).

The record also shows that Hernandez did not speak to the senior officer on duty about being sexually assaulted on, or about having any other problems with another inmate, on January 9, 2009, but he did tell his case manager about an incident, and this case manager met with Hernandez to discuss the situation. (SMF ¶¶ 27-28.) Hernandez did not describe what was happening, and did not report to the case manager any allegations of sexual assault or pressure. (Id.) Even two months later, when Hernandez first reported claims of sexual assault during two incidents in

January 2009, Hernandez still denied sexual contact with the other inmate. (Id. ¶¶ 15-24.)

The record also supports the United States' assertion that its officers and agents exercised discretion to assess Hernandez's needs based upon information that he supplied them. The BOP program statement that was in effect during the time of the alleged incidents required BOP staff to immediately "report and respond to allegations of sexually abusive behavior" and report to the Operations Lieutenant. (SMF, Romano Decl. (Ex. 1); Doc. 39, (Ex. 2-A), Program Statement 5324.06, Sexually Abusive Behavior and Prevention (dated Apr. 27, 2005).) That program statement obligated the Operations Lieutenant then to exercise discretion in safeguarding the inmate in a manner "which will vary depending on the severity of the alleged sexually abusive behavior and could range from monitoring the situation, changing housing assignments, changing work assignment, placing alleged victim and perpetrator in Special Housing, etc." (Doc. 39, (Ex. 2-A), Program Statement 5324.06 § 11(a).)

The fact that Hernandez did not provide prison staff with any specificity regarding his alleged problems with another inmate significantly undermines his claim that these same prison employees were negligent in failing to protect Hernandez from sexual or physical assault by the other inmate. Furthermore, the record reveals

that Lieutenant Soeller met with both Hernandez and the allegedly offending inmate, and found that Hernandez did not appear to be very worried about the situation, and that the other inmate had no problems with Hernandez. Based on his interviews with both inmates, Lieutenant Soeller concluded that he lacked a reasonable basis to place either inmate in the SHU, but he cautioned each inmate that if there were further incidents between them, that both of them would be placed in the SHU. (SMF ¶ 10.) Additionally, the record shows that Hernandez declined placement in protective custody when this option was made available to him.

Furthermore, even if Hernandez had been specific in his complaints regarding problems he was experiencing in January 2009, and even if there were a clearer basis for officials to act upon more specific complaints, the program statement in effect at the time did not mandate that prison officials take any specific, non-discretionary action such as removing Hernandez or the alleged attacker from a particular unit, or placing either inmate in segregated housing. (Doc. 39, (Ex. 2-A), Program Statement 5324.06.) Instead, the program statement in effect obligated prison officials to exercise discretion about how best to respond to complaints of problems between inmates.[3]

---

[3] Hernandez attempts to argue that BOP regulations that became effective in 2012 somehow created a non-discretionary duty of prison staff to report and respond to his January 2009 allegations of sexually abusive behavior. As the

In summary, we agree with the United States that the issues that Hernandez

presented to staff at LSCI Allenwood on January 9 and 14, 2009, regarding problems

that Hernandez claimed to be having with another inmate, present the kind of

circumstances that required BOP officials to exercise their discretion into how best

to safeguard inmates and respond effectively to what were, at the time, general and

vague complaints. We thus find that the discretionary function exception has clear

application to the facts of this case, and compels us to find that summary judgment

in favor of the United States is warranted.

## IV.    <u>RECOMMENDATION</u>

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED

THAT the defendant's motion for summary judgment (Doc. 23.) be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen
> (14) days after being served with a copy thereof. Such party shall file

---

defendant notes, however, these regulations, set forth in 28 C.F.R. § 115, did not
become effective until July 2012, and were thereafter incorporated into BOP
Program Statement 5324.09. It is unnecessary to analyze these regulations in this
report for the simple reason that the regulations were not effective until more than
three and one-half years after the incidents in this case are alleged to have
occurred. In short, the 2012 regulations have no relevance to whether BOP
officials had discretion to respond to Hernandez's complaints in 2009.

with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of June 2013.

> *S/Martin C. Carlson*
> Martin C. Carlson
> United States Magistrate Judge